FILED
2008 Sep-30 PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ELMORE N. DISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 07-BE-0053-S** |
| | ) | |
| **MICHAEL J. ASTURE, Commissioner of the Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Elmore N. Dison applied for disability insurance benefits and supplemental security income benefits on November 30, 2003. The Commissioner denied the claims. The plaintiff then requested and received a hearing before an Administrative Law Judge. On April 11, 2006, the ALJ held that Dison was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for DIB or SSI payments. Judkins then applied to the Appeals Council for review. On September 8, 2006, the Appeals Council denied Judkins's request for review. This denial constituted the final decision of the Commissioner of Social Security and the exhaustion of Dison's administrative remedies. The case is now before the court for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Based on the court's review of the record in this case and the parties' briefs, the court concludes that the decision of the Commissioner should be AFFIRMED.

## STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520, 416.920.

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The

court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record which support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

**BACKGROUND**

Dison was 46 years old at the time of the administrative hearing. (R. 50). He has a high school diploma and attended college for one year. (R. 68). In the past, Dison worked as an installer and construction worker. (R. 54-47, 63). Dison alleges that he is unable to work due to back and neck pain, cluster headaches, and hepatitis C. (R. 62-63).

Dison alleges that he became disabled on December 31, 1997. (R. 62-63). He was insured for disability insurance benefits through June 30, 1999. (R. 59). Dison asserts that he cannot walk for more than a few city blocks on a good day and that he is unable to stand or sit for long periods. (R. 399-400). He has a history of cocaine abuse and has been through drug rehabilitation. (R. 193). Dison has a history of cluster headaches and back and neck pain dating back to 1987, and treatment for these medical conditions began well before his alleged disability onset date. (R. 110, 136, 145, 158, 163-64, 192).

Dison visited Dr. Emmanuel Odi in July of 2003 because of pain in his left shoulder and back. (R. 186-89). An MRI of his shoulder revealed mild to moderate degenerative changes,

especially at the AC joint, with mild impingement but no rotator cuff tear. (R. 188). An MRI of his thoracic spine showed that the thoracic spinal cord and the spinal cord were normal. (R. 189). The T7-8 level showed some calcification within the disc, and the T8-9 level had a small bulging disc on the right side. (R. 189).

Dr. Douglas S. Dickinson conducted a liver biopsy in August of 2003 that showed the plaintiff had chronic hepatitis C with early portal fibrosis but no definite cirrhosis. (R. 194). The liver biopsy also showed mild chronic triaditis with mild chronic interface hepatitis, no active hepatocellular necrosis, and no significant stainable iron (Iron Stain). (R. 204). Initially, Dr. Dickinson did not want to treat the plaintiff for hepatitis C because of his use of narcotics and alcohol. (R. 214). Dr. Dickinson told the plaintiff that refraining from consuming alcohol while on Interferon was very important because alcohol renders the drug less effective and actually stimulates hepatitis C viral replication. (R. 192). Dr. Dickinson eventually did prescribe Interferon and Ribavirin therapy, which Dison underwent for nine and a half months, from October 2003 until July 2004. (R. 369). Dison, on his own accord, decided to end his treatment earlier than prescribed. (R. 369). While he was taking Interferon, Dr. Lisa Larson treated him for anemia secondary to Interferon and Ribavirin therapy, and she noted that he was still occasionally drinking. (R. 238). Dr. Dickinson described Dison as a "challenging patient to care for" who was "very difficult in his treatment of the nurses." (R. 194).

Dr. Joseph Sherrill treated Dison on April 18, 2005, for a distal left tibia and fibula fracture. (R. 279-80). Dr. Sherrill noted that Dison had stated that he was recently involved in timber harvesting and that he had sustained a lot of trauma to his legs secondary to chainsawing and cutting trees. (R. 280).

On September 8, 2005, Dison injured his right ankle, and Dr. S. Kraig Johnson examined and treated him. (R. 273). Dr. Johnson diagnosed him with an avulsion fracture of the tarsal bones in his right ankle. (R. 273). Dison asked for prescription painkillers, but Dr. Johnson refused his request because of the limited nature of the fracture. (R. 273). Instead, Dr. Johnson offered Dison Wygesic, which he refused. (R. 273). Dr. Johnson stated that Dison then caused a significant scene in the ER, demanding narcotics and behaving belligerently. (R. 273). He had acted similarly on a visit to the ER in 1995. (R. 131). On that occasion, Dison again demanded narcotics that the treating physician did not feel were in his best interest, and the plaintiff became hostile and threatening to the point that the treating physician called security for the protection and safety of the staff. (R. 131-32).

On September, 14, 2005, Dr. Gary Boyd examined Dison and noted that he was taking Effexor for his migraines. (R. 345).

On November 11, 2005, Dr. Sherrill determined that the distal tibia/fibular fractures were well healed with a full range of hip, knee, ankle, and foot motion, and that both fractures were healed clinically and radiographically. (R. 270-71). Dr. Sherrill stated that full unrestricted activities should be allowed following the satisfactory demonstration of the fracture healing clinically and radiographically. (R. 333). Dr. Sherrill also stated that Dison had migraines that were under good control with Zomig. (R. 328).

A state agency non-examining consultant, Mark E. Cooper, reviewed the available medical records to date and issued an opinion on February 6, 2004, as to Dison's Residual Functional Capacity (RFC). (R. 260-67). He concluded that Dison could perform frequent climbing of ramps and stairs; frequent balancing, stooping, kneeling, crouching, crawling; and

occasional climbing of ladders, ropes, and scaffolds. (R. 262).

The ALJ concluded that Dison has severe impairments of cluster migraine headaches, back and shoulder pain secondary to degenerative changes, a history of fracture in the distal shaft of the tibia and fibula, and hepatitis C. (R. 20). The ALJ found that these impairments, independently or in combination, were not severe enough to qualify under the Listing of Impairments. (R. 20). To the extent that Dison alleged to be more severely impaired, the ALJ found his testimony to be inconsistent with, and less credible than, substantial evidence in the record. (R. 20-21). Specifically, the ALJ noted that no examining or treating physician had made any findings equivalent to the criteria of any listed impairment. (R. 20). Additionally, the ALJ stated that the plaintiff's noncompliance exhibited in the medical record negatively affected his credibility. (R. 21). Furthermore, the ALJ concluded that the plaintiff's testimony that he was unable to walk for long periods due to the fracture in his left leg conflicted with the medical record that showed that his fractures had healed and he had full range of motion in his knee and ankle. (R. 21).

The ALJ determined that, given his impairments, Dison could not perform his past relevant work, but that he could perform a limited range of medium work. (R. 21-23). The ALJ, therefore, denied Dison's claim for disability insurance benefits. (R. 23).

**ISSUES PRESENTED**

Dison presents the following issue for review: whether the ALJ adequately considered the Title II component of the plaintiff's claim and whether substantial evidence supports a finding that the plaintiff has the RFC to perform light work.

**DISCUSSION**

The plaintiff first argues that the ALJ failed to adequately consider his disability insurance benefits claim, because the ALJ did not consider whether the plaintiff was disabled at any time prior to the date last insured and through the date of the decision. Specifically, the plaintiff argues that the ALJ erred by failing to discuss any medical evidence prior to 2003, including medical evidence dating back to 1987. However, the plaintiff's alleged disability onset date is December 31, 1997, three years after the MRI he wants the ALJ to consider and ten years after the earliest medical evidence he wants the ALJ to consider. (R. 59). The plaintiff's focus on records that reflected his condition years prior to the alleged onset date of the disability is curious because the plaintiff worked during and after these alleged impairments.

In Social Security cases, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ is required to develop the claimant's medical record for at least 12 months prior to the month in which he applied for benefits unless the ALJ has reason to believe development of an earlier period is necessary. *See* 20 C.F.R. § 416.912(d). If applicable, the ALJ must also develop the claimant's "complete medical history for the 12-month period prior to (1) the month [he was] last insured for disability insurance benefits . . ." 20 C.F.R. § 416.912(d)(2). "While the ALJ is required to fully develop the record before ruling on claims of disability, [he] is under no duty to go to inordinate lengths to develop a claimant's case." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1340 n.9 (M.D. Ala. 2001). The administrative record contains medical records from as far back as 1987 through the date of the hearing. (R. 96-282). Furthermore, the record indicates that the Social Security Administration

made every reasonable attempt to fully develop the record and obtain the evidence necessary to make a determination. (R. 37).

In the instant case, the plaintiff applied for disability benefits in November 2003, and the ALJ's record contains many references to medical records within 12 months prior to the application date. However, the plaintiff's last insured date was not in 2003, but was June 30, 1999. Even if June 30, 1999 represents the appropriate date to begin the 12-month period, counting backward, then the ALJ was not required to develop the medical history prior to June 30, 1998. However, as already indicated, the administrative record does contain records dating back as far as 1987. (R. 96-282).

The plaintiff does not allege that the ALJ failed to consider any relevant medical evidence *from June 30, 1998 through the date of the ALJ's hearing*. Instead, the plaintiff argues that by not referencing medical evidence dating back to 1987, the ALJ wholly failed to consider his claim for disability benefits. The ALJ's silence regarding medical evidence dating back to 1987 does not necessarily require the court to conclude that the ALJ had not reviewed the old records. The ALJ is not required to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" is not a "broad rejection" of evidence of the plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). While the ALJ did not cite to any medical records prior to 2003, he did cite to the only exhibit, exhibit 1F, that contained medical records prior to 2003. (R. 96-198). Furthermore, the ALJ's entire opinion discusses the severity of the plaintiff's impairment and medical evidence regarding the plaintiff's ability to perform daily tasks. The ALJ found that the plaintiff was not disabled "at any time through the date of this decision,"

whether now or in December of 1997. (R. 22). Therefore, the court finds that the ALJ properly considered the plaintiff's claim for disability insurance benefits.

The plaintiff also argues that the ALJ's finding of Residual Functional Capacity is not based on substantial evidence. The plaintiff argues specifically that the ALJ erred by failing to discuss the non-examining state agent's RFC finding that the plaintiff was capable of performing light work, because the ALJ ultimately determined that the plaintiff is capable of performing a limited range of medium work.

If substantial evidence in the record had not supported the ALJ's finding that the plaintiff had the RFC to perform medium work, substantial evidence would have nonetheless supported a finding that the plaintiff retained the RFC to perform light work and sedentary work. "If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c); 20 C.F.R. § 416.967(c). Therefore, the ALJ's finding that the plaintiff could perform medium work implied a holding that the plaintiff could also perform light and sedentary work. 20 C.F.R. § 404.P App. 2. Under either standard, the plaintiff is not disabled.

For this reason, if the ALJ erred by finding the plaintiff capable of medium work, such an error is harmless unless the record does not contain substantial evidence to support light or sedentary work. The record *does* contain substantial evidence supporting the RFC to perform light work through two consistent sources: the state's agent's assessment and the VE's testimony. The ALJ accepted the VE's testimony that the plaintiff could perform light work (R.23), and then stated that the plaintiff could perform a limited range of medium work (R. 23). The ALJ also noted that the plaintiff's injuries are clinically healed and that the medical evidence did not

indicate that the plaintiff was impaired to the degree he alleges. (R. 21). Thus, the ALJ's ultimate conclusion that the plaintiff can perform at least light work, a finding implied by his conclusion that the plaintiff can perform a limited range of medium work, is supported by substantial evidence.

The claimant argues that the RFC finding would likely be more restrictive if it accounted for his fractured bones in both of his legs. This argument is not persuasive because, as the ALJ discussed, the medical record shows the fractures are clinically healed. (R. 21). The plaintiff argues that the ALJ should have accorded significant weight to the state agent's RFC finding. The court notes that the state agent specifically found that the plaintiff could perform frequent climbing of ramps and stairs; frequent balancing, stooping, kneeling, crouching, crawling; and occasional climbing of ladders, ropes, and scaffolds. (R. 262). The state agent also determined that the alleged severity of the plaintiff's impairments was not supported by objective medical evidence. (R. 261, 265). The court finds that substantial evidence within the record, including that which the plaintiff has pointed out to this court, supports a finding that the plaintiff is capable of performing at least light work and, therefore, he is not disabled.

The plaintiff also argues that the ALJ should have determined different RFC findings for distinct periods from the time the plaintiff was allegedly disabled through the time of the hearing. The plaintiff fails to provide any legal authority for such distinction. This court finds this argument nonsensical; a plaintiff is either permanently disabled as of the onset date or he is not. Disability within the context of the Social Security Act is not a condition that waxes and wanes, flaring up in distinct periods and disappearing in others; it is a permanent condition. Therefore, the ALJ was not required to determine separate RFC findings for different periods of time, and

substantial evidence in the record shows that the plaintiff is capable of performing light work and there are a sufficient number of jobs available in the national economy that the plaintiff can perform.

**CONCLUSION**

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED. A separate order to that effect will be entered simultaneously.

DONE and ORDERED this 30th day of September, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE